S10A0948. PHILLIPS v. THE STATE.

(697 SE2d 818)

CARLEY, Presiding Justice.

A jury acquitted Leon Phillips of malice murder, but found him guilty of the felony murder of Veronica Rucker and numerous other offenses. After treating certain felony murder verdicts as surplusage and merging other counts, the trial court entered judgments of conviction and imposed sentences of life imprisonment without the possibility of parole for felony murder during the commission of aggravated assault, a consecutive life sentence for kidnapping, and

various terms of years for false imprisonment, cruelty to children in the first degree, possession of a weapon during the commission of a crime, driving without a license, and giving a false name. After a motion for new trial was denied, Phillips appealed to the Court of Appeals, which transferred the case to this Court.*

1. Construed most strongly in support of the jury's verdicts, the evidence shows that, at a road safety checkpoint, Phillips was stopped on a motorcycle belonging to the victim's husband. Phillips was wearing a jacket, helmet, and hat taken from the Rucker home. He was unable to produce a driver's license, and he gave a false name and date of birth. Without inquiry, Phillips told the officers that he was coming from the Rucker home and that he had recently purchased the motorcycle from Mr. Rucker. After being arrested, Phillips discarded a gun near the place where he was sitting. About two hours later, the victim's son Rhyan returned home from school and found his mother dead on the floor and his three-year-old brother screaming in a closet which was blocked by a dresser. The cause of death was a gunshot wound to the head fired by the gun which Phillips discarded. At the jail, Phillips changed his story, claiming that he had not come from the Rucker home and that he had obtained the motorcycle, gun, and other items elsewhere. Without being told, Phillips knew that the victim was a female. Rhyan identified Phillips as having previously been at the Rucker home to repair an appliance.

Phillips specifically contends that the wholly circumstantial evidence did not exclude every reasonable hypothesis other than his guilt of the crimes committed at the Rucker home. He was found with only a few of numerous items stolen from that home, he testified that he obtained the items from two other individuals, and the exact time of death was not shown. However, Phillips made contradictory incriminating admissions, part of which placed him at the Rucker home within, at most, a very few hours of the death and of his arrest near the home. He possessed the murder weapon and knew information about the murder which the police did not provide. No evidence corroborated his testimony.

" '[Q]uestions as to reasonableness are generally to be

---

* The crimes occurred on September 15, 2006, and the grand jury returned an indictment on October 10, 2007. The jury found Phillips guilty on December 13, 2007 and, on that same day, the trial court entered the judgments of conviction and sentences. The motion for new trial was filed on December 20, 2007, amended on April 15, 2008, and denied on November 7, 2008. Phillips filed the notice of appeal on December 2, 2008, and the Court of Appeals transferred the case on February 18, 2010. The case was docketed in this Court for the April 2010 term and submitted for decision on the briefs.

decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilty is unsupportable as a matter of law.' (Cit.)" [Cit.] It is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient. [Cit.]

*Brooks v. State*, 281 Ga. 514, 515-516 (1) (640 SE2d 280) (2007). Reviewing the evidence in the light most favorable to the verdicts, we conclude that it was sufficient to exclude every reasonable hypothesis save that of Phillips' guilt and to enable a rational trier of fact to find him guilty beyond a reasonable doubt of the crimes for which he was convicted, either as the perpetrator or as a party to the crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Chandler v. State*, 281 Ga. 712-714 (1) (642 SE2d 646) (2007); *Brooks v. State*, supra.

2. The trial court's denial of a motion to suppress the fruits of an illegal search and seizure at the roadblock is enumerated as error.

Phillips first argues that he was stopped prior to the establishment of the roadblock. The supervising officer testified that the decision to implement the roadblock was made at approximately 12:58 p.m., and acknowledged that the incident report showed that Phillips was pulled over at 12:55. However, he clarified that he was not sure of the exact time but that the roadblock had been established before Phillips attempted to go around one of the cars which had already been stopped. Consistent with the first factor set forth in *LaFontaine v. State*, 269 Ga. 251, 253 (3) (497 SE2d 367) (1998) for the proper employment of police roadblocks in this state,

> the evidence showed that the supervisory officer was on the scene at the roadblock's inception, [cit.] that the field officers did not commence the roadblock on their own initiative, and that the time at which [Phillips] was stopped was generally consistent with the time for the roadblock authorized by the supervisory officer. Accordingly, even accepting that [Phillips] was stopped at [12:55 p.m.], he was not stopped at a roadblock unauthorized [or not yet established] by supervisory personnel.

*Britt v. State*, 294 Ga. App. 142, 145 (1) (a) (ii) (668 SE2d 461) (2008). Phillips also asserts that the third and fourth factors in *LaFon-*

*taine* were not met, because the arresting officer removed the key to the motorcycle and the motorist delay was therefore not minimal, and because the State failed to prove that the roadblock was well-identified as a police checkpoint. However, these assertions "are patently without merit." *Hardin v. State*, 277 Ga. 242, 244 (3) (587 SE2d 634) (2003). Motorist delay was minimal, as the officers were only checking for licenses, insurance, and tags, and the reason that the arresting officer removed the motorcycle key was that Phillips kept trying to pull off. See *Brent v. State*, 270 Ga. 160, 162 (2) (510 SE2d 14) (1998). Furthermore, the roadblock was properly identified by signs, cones in the roadway, and officers in traffic vests, and Phillips admitted at trial that he could see the roadblock in the distance where cars had been stopped. See *Lutz v. State*, 274 Ga. 71, 74 (3) (548 SE2d 323) (2001); *Brent v. State*, supra.

3. Phillips further enumerates the trial court's denial of a motion to suppress his statements giving a false name and indicating that he did not have a driver's license with him. He argues that these statements were inadmissible because they were made in response to questioning after he was stopped at the roadblock, while he was in police custody prior to being advised of and knowingly and intelligently waiving his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). "[H]owever, roadside questioning at a routine stop does not constitute such a custodial situation. [Cit.] [The] statements made by [Phillips at that time] were made in response to routine roadside questioning. . . . There was no error." *Lebrun v. State*, 255 Ga. 406, 407 (3) (339 SE2d 227) (1986). See also *Brown v. State*, 223 Ga. App. 364, 366-369 (477 SE2d 623) (1996).

4. Phillips contends that the trial court erred in granting a motion to admit similar transaction evidence. The State responds that Phillips waived any objection which was made at the pre-trial hearing on that motion but not at trial. However, we recently overruled cases which "require a defendant to repeat an objection at trial to similar transaction evidence that was raised and overruled at a . . . hearing" held pursuant to Uniform Superior Court Rule 31.3 (B). *Whitehead v. State*, 287 Ga. 242, 249 (2) (695 SE2d 255) (2010). A defendant is not "required to raise and have overruled before the jury the very same objection to similar transaction evidence that already was raised and ruled on by the trial court." *Whitehead v. State*, supra.

In this appeal, Phillips urges that the prior offense at issue was inadmissible because it was not sufficiently similar to the crimes charged here in light of the purposes for which it was offered, including plan, scheme, course of conduct, and modus operandi. Because Phillips "raises the same issue on appeal that he raised at

the Rule 31.3 (B) hearing, . . . he properly preserved his claim and we may address it on the merits." *Whitehead v. State,* supra.

> Evidence that a defendant has committed an independent offense or bad act is admissible if the State shows and the trial court rules that there is a " 'sufficient connection or similarity between the independent offenses or acts and the crime charged so [that] proof of the former tends to prove the latter.' " [Cit.]

*Whitehead v. State,* supra at 249 (3).

The similar transaction evidence admitted in this case consists of convictions for armed robbery and aggravated assault with intent to rape committed in 1988. Phillips argues that a high degree of similarity is necessary to prove modus operandi, such that the crime on trial bears the defendant's "criminal signature" and thereby shows his identity. However, "[m]odus operandi is similar to 'course of conduct' — both phrases describe the way the crime was committed, and the State sought to admit the similar transaction for the purpose of showing course of conduct" and other purposes besides identity. *Ellis v. State,* 282 Ga. App. 17, 25 (3) (d) (637 SE2d 729) (2006). Contrary to Phillips' further assertion, the 18-year lapse of time between the prior convictions and the crimes at issue here does not require exclusion of the evidence. *Pareja v. State,* 286 Ga. 117, 119, 121, fn. 2 (686 SE2d 232) (2009).

Phillips also argues that there were many differences between the previous transaction and the one now before us, including the use of a different type of weapon in 1988. However, "[t]he fact that [the] prior incident involved a [knife] rather than a [gun] did not render that incident inadmissible. [Cit.]" *Campbell v. State,* 278 Ga. 839, 841 (3) (607 SE2d 565) (2005). " ' "When considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and the crime in question." ' [Cit.]" *Whitehead v. State,* supra. In both instances, the victims were women, were robbed with deadly weapons, and were left nude from the waist down, but were not penetrated. Because of these similarities, we conclude that the trial court did not err in admitting the similar transaction evidence. See *Lundy v. State,* 265 Ga. 30, 31 (2) (453 SE2d 466) (1995).

5. During the investigation, a police officer showed the victim's son Rhyan photographs of several persons, including Phillips, all of whom were employed by the company that serviced appliances at the Rucker home. Rhyan told the officer that two of the individuals in the photographs, including Phillips, had been to the home to repair a washer. At trial, Rhyan identified Phillips and testified that he had

briefly played basketball when he came to repair the washer. Phillips now urges that the photographic identification should have been suppressed because it was made pursuant to an impermissibly suggestive procedure which created a substantial likelihood of mis-identification.

The witness "did not use the photograph[s] to identify [Phillips] as the perpetrator of the crimes. . . . [Rhyan] merely used the photograph[s] to determine that the man [who] had previously [been] identified as [the] assailant was, in fact," a repairman who had been to the Rucker home before. *Curtis v. State*, 183 Ga. App. 6, 7 (1) (357 SE2d 849) (1987) (where defendant was identified by use of a photograph as a former neighbor of the victim). Therefore, " '[t]his is a case . . . where the officer already had the suspect's name and was using investigatory techniques to confirm his identity. It was more "a matter of detection" than an identification proce-dure . . . . (Cit.)' [Cit.]" *Jackson v. State*, 279 Ga. 449, 454 (5) (614 SE2d 781) (2005). See also *Hunter v. State*, 202 Ga. App. 195, 196 (1) (413 SE2d 526) (1991).

> It is the . . . initial identification of [Phillips] *as the perpe-trator* of the offenses, not [Rhyan's] subsequent identifica-tion of [the] assailant as a [repairman], that is the crucial inquiry. The only pre-trial identification of [Phillips] as the . . . assailant stems from the circumstances of his arrest [and from his inculpatory statements] . . . [soon] after commission of the crimes, and not from any identification procedure conducted by the State. Since there was no pre-trial identification procedure conducted by the State which led to [Phillips'] arrest and prosecution, the trial court did not err in [admitting the photographic identifica-tion and] allowing [Rhyan] to make [his] in-court identifi-cation of [Phillips]. (Emphasis in original.)

*Curtis v. State*, supra.

6. Phillips further contends that the State, in its opening statement, improperly placed his character into evidence by using a Powerpoint presentation that included a booking photograph of Phillips.

"[B]ooking photographs have been held not to inject character into evidence because they do not suggest that the defendant has committed previous crimes . . . . [Cit.]" *Rittenhouse v. State*, 272 Ga. 78, 80 (3) (526 SE2d 342) (2000). Moreover, the photograph showed Phillips from his shoulders up, wearing a dark t-shirt, and gave no indication that he was in jail. As a result, the jury could not determine from the picture of Phillips that it was a booking photo-

graph or was related either to the offenses on trial or to a previous arrest. *Clark v. State*, 285 Ga. App. 182, 185 (3) (645 SE2d 671) (2007); *Edwards v. State*, 224 Ga. App. 14, 18 (3) (479 SE2d 754) (1996). The mere fact that a photograph of the defendant is in police records does not place his character in issue. See *Fulton v. State*, 278 Ga. 58, 61 (5) (597 SE2d 396) (2004); *White v. State*, 267 Ga. 523, 524 (6) (481 SE2d 804) (1997). Thus, the photograph of Phillips, without more, could "not implicate his character. [Cits.]" *Edwards v. State*, supra.

> The use of such a visual aid is a permissible part of the opening statement, as its purpose is to assist the jury to understand and to remember the evidence. [Cits.] The trial court properly instructed the jurors that what the attorneys said to them was not to be considered as evidence. [Cit.] Furthermore, we cannot determine [that the prosecutor ever identified the source of the photograph], because the substance of the opening statements was not transcribed. [Cit.] " '(T)he trial court has a sound discretion to control the content of the opening statement of either party, particularly with regard to matters of questionable admissibility. (Cits.)' (Cit.)" [Cit.] After consideration of all of the circumstances, we find no abuse of discretion. [Cit.]

*McGee v. State*, 272 Ga. 363, 364 (3) (529 SE2d 366) (2000). Moreover, Phillips has failed to show any prejudice from the State's use of the photograph. See *Billings v. State*, 278 Ga. 833, 836 (7) (607 SE2d 595) (2005).

*Judgments affirmed. All the Justices concur.*

DECIDED JULY 12, 2010.

*Brandon Lewis*, for appellant.

*Tracy G. Lawson, District Attorney, Billy J. Dixon, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Assistant Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.